```
                   UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE
```

John P. Chippendale,
    Claimant

    v.                              Case No. 14-cv-55-SM
                                    Opinion No. 2015 DNH 008

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
    Defendant


## O R D E R


Pursuant to 42 U.S.C. §§ 405(g), claimant, John P. Chippendale, moves to reverse or vacate the Acting Commissioner's decision denying his applications for Disability Insurance Benefits ("DIB") under the Social Security Act, 42 U.S.C. § 423 (the "Act").  The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Acting Commissioner's motion is granted.


## Factual Background

I.   Procedural History

On August 2, 2011, claimant filed an application for Disability Insurance Benefits, alleging that he had been unable to work since August 1, 2010, due to blindness in his right eye

caused by central retinal artery occlusion[1] and double vision in his left eye, osteoarthritis of his knees, post-traumatic stress disorder ("PTSD"), and tinnitus. That application was denied on December 22, 2011, and claimant requested a hearing before an Administrative Law Judge ("ALJ"), at which time claimant also amended his claim to include intermittent bilateral shoulder pain.

On December 27, 2012, claimant, appearing pro se, and a vocational expert appeared before an ALJ, who considered claimant's application de novo. The next day, the ALJ issued his written decision, concluding that claimant was not disabled, as that term is defined in the Act, at any time prior to the date of his decision.

The Appeals Council denied claimant's request for review, making the ALJ's denial of claimant's applications the final decision of the Acting Commissioner, subject to judicial review. Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence. Claimant then filed a "Motion for Order Reversing the Decision of the Commissioner" (document no. 6). In response, the

---

[1] A retinal artery occlusion is a blockage in an artery that carries blood to the retina, the part of the eye that detects light. See http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0002023/.

Commissioner filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 8).  Those motions are pending.

II.   Stipulated Facts

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 9), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.   "Substantial Evidence" and Deferential Review

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  See 42 U.S.C. §§ 405(g); see also Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent

conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966); see also Richardson v. Perales, 402 U.S. 389, 401 (1971).

This court's review of the ALJ's decision is, therefore, both limited and deferential. The court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether he is disabled under the Act. Rather, the court's inquiry is "limited to determining whether the ALJ deployed the correct legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position. See, e.g., Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

II. The Parties' Respective Burdens

An individual seeking DIB is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

4

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Sec'y of Health & Human Servs, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that his impairment prevents him from performing his former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform, in light of his age, education, and prior work experience.  See Vazquez v. Sec'y of Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982); see also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v.

Sec'y of Health & Human Servs., 690 F.2d 5, 6 (1st Cir. 1982). Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.

**Background - The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920. See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003). Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability: August 1, 2010. Admin. Rec. at 14. Next, he concluded that claimant suffers from several impairments which are "severe" in that they "impose significant limitations on the claimant's ability to perform

basic work activities." Id. They are: "central retinal artery occlusion and osteoarthritis status post knee replacement bilaterally." Id. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1. Id. at 17. Claimant does not challenge any of those findings.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") "to perform the exertional demands of light work as defined in 20 C.F.R. 404.1567(b) except he can occasionally climb ladders, ropes, scaffolds, ramps, and stairs, crouch, crawl, bend, kneel, and stoop. He has monocular vision due to right eye blindness. He should avoid moderate exposure to noise."[2] Admin. Rec. at 17. In spite of those restrictions, and the vocational expert's opinion to the contrary based on the hypothetical presented by the ALJ involving a worker with the

---

[2] "RFC is what an individual can still do despite his or her functional limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

above-listed limitations, the ALJ concluded that claimant was capable of returning to his prior job.  Id. at 20.  Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, through the date of his decision.

## Discussion

Claimant challenges the ALJ's decision essentially on the following bases: (1) his decision that claimant could perform light work was not supported by substantial evidence; (2) he rejected the vocational expert's opinion that claimant would be unable to perform the demands of his past work; and (3) he failed to properly weigh the medical evidence.

I.  Claimant's Residual Functional Capacity

Claimant first challenges the ALJ's determination that he was capable of performing light work, including his past work, asserting that the ALJ failed to give appropriate weight to the opinions of Dr. Cheryl Bildner, Ph.D., a state agency consultant who examined claimant for the purpose of determining whether he was disabled, and the vocational expert, Howard D. Steinberg. Claimant's Memorandum (document no. 6) at 2.  Consequently, he claims the ALJ's decision that he could perform the rigors of his past work as an office machine servicer, designated as "light work" in the Dictionary of Occupational Titles, 633.281-018 (2001), is not supported by substantial evidence.

There is, to be sure, evidence in the record supportive of claimant's assertion that he is disabled. As he points out, Dr. Bildner opined that claimant was "unable to sustain attention and concentration for prolonged periods of time," that he was "unable to persist at tasks," and that his "[p]ace of task completion [was] likely to be delayed." Admin. Rec. at 298. Dr. Bildner diagnosed claimant as having "Major Depressive Disorder, recurrent, moderate severity"; "Posttraumatic Stress Disorder"; and "hypertension, hypolipoproteinemia, tinnitus, gout, bilateral total knee replacement, [and] central retinal vein occlusion." Id.

The vocational expert who appeared at claimant's December 2012 hearing opined in response to the ALJ's hypothetical description of someone with claimant's limitations that he did "not believe that the past work could be performed." Id. at 36. The vocational expert's testimony, alone or combined with the limitations described by Dr. Bildner, could serve as substantial evidence of claimant's inability to perform his past relevant work. See Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982).

However, at step four of the five-step analysis for determining whether an individual is disabled under 20 C.F.R. § 404.1520(a), the claimant bears the burden of proving that his

impairments prevent him from performing his past relevant work. § 404.1512©); Bowen v. Yuckert, 482 U.S. 137, 146 (1987). Further, an "ALJ is not required to elicit the testimony of a vocational expert" to determine the claimant's capacity to perform past relevant work. Santos-Martinez v. Sec'y of Health & Human Servs., 54 F.3d 764, at *2 (1st Cir. 1995); see also Stanton v. Astrue, 370 F. App'x 231, 235 (2d Cir. 2010). Thus, the ALJ was not required to consult, or to accept, a vocational expert's opinion to determine claimant's RFC to perform his past relevant work, and his decision to reject the vocational expert's opinion as inconsistent with the record and rely instead on the prior vocational analysis performed as part of the adjudication of claimant's application is not in error. See Admin. Rec. at 43-47; see also Roma v. Astrue, No. 07-1057, 2010 WL 34418166, at *5 (D. Conn. Aug. 24, 2010) (holding that the ALJ is permitted to rely on a State agency adjudicator's vocational analysis).

Furthermore, there is substantial evidence in the record to support the ALJ's contrary conclusion that claimant is capable of performing light work. As the ALJ noted, Dr. Bildner, on whose opinion claimant urges this court to rely to reverse the ALJ's decision, also opined:

> Claimant was alert and oriented to person, place, time, and situation. Claimant was able to recall 3/3 words immediately and 3/3 words following a five minute delay. He recalled the third word with a prompt.

> Claimant was able to spell the word "world" correctly forward and backward.  Attention and concentration were good.  Intelligence and fund of knowledge are estimated to be within the average range.  Claimant could follow simple directions.  Insight and judgement (sic) appeared intact.  Motivation is fair.

Admin. Rec. at 16, 296.  She further opined claimant was "able to complete activities of daily living.  He dresses daily, maintains his hygiene, assists with household chores, prepares meals, manages affairs and drives short distances."  Id. at 16, 297.  Dr. Bildner also opined that claimant "is able to interact appropriately and communicated effectively with others," "understand and remember locations and work-like procedures" with "no gross deficits . . . in cognitive functioning," "tolerate stress associated with a work setting," "make simple [decisions]," "interact appropriately with supervisors," and manage funds on his own behalf.  Id. at 16, 297-98.  Finally, Dr. Bildner concluded that claimant "exhibits limited motivation to return to work."  Id. at 298.

In addition to this evidence from Dr. Bildner that supports the ALJ's decision that claimant is capable of performing light work, another state agency consultant, Dr. John MacEachran, whom the ALJ recognized did not examine claimant but reviewed the record, opined that claimant is capable of lifting up to fifty pounds occasionally and up to twenty pounds frequently and sitting, standing, or walking for six hours in an eight-hour work

day with normal breaks, with no postural or manipulative limitations. Id. at 43-44. Dr. MacEachran acknowledged claimant's visual limitations caused by claimant's compensated monocular vision, including limited near acuity, far acuity, depth perception, and field of vision. Id. at 44. Dr. MacEachran concluded that claimant's limited vision does not constitute a "significant factor or limitation in most workpl[a]ce functions," noting that claimant "retains [the] ability to drive," notwithstanding his visual limitations. Id.

On September 11, 2012, Dr. Mehl, claimant's primary care physician from at least February through August 2012,[3] opined that claimant could continuously lift up to one hundred pounds; could sit,stand, or walk up to eight hours each day without interruption; and could perform normal activities with his hands and feet, including postural activities such as climbing stairs, stooping and kneeling, and crouching. Id. at 282-85. Dr. Mehl acknowledged that claimant is visually impaired in his right eye but stated that he is still able to avoid ordinary workplace hazards, read very small print, read ordinary newspaper or book print, view a computer screen, and discern differences in shape

---

[3] Although claimant denies that Dr. Mehl was his primary care physician, the record provides substantial documentary evidence to support the ALJ's conclusion that she was. Admin. Rec. at 247-56, 268-72, 282-87.

12

and color of small objects such as screws, nuts or bolts.  Id. at 285.

As the ALJ noted, Dr. Mehl's opinion is consistent with claimant's ability to do heavy work.  Although she was a treating physician, and the ALJ was entitled to give her opinion controlling weight, see 20 C.F.R. § 404.1527(c)(2), the ALJ exercised his judgment and afforded her opinion great, but not controlling, weight because it was unclear how long she had treated claimant and because her opinion that claimant could perform heavy work was not wholly consistent with the record, especially in light of "claimant's status post knee replacement." Id. at 20.  These medical opinions, including that of Dr. Bildner, constitute substantial evidence supporting the ALJ's RFC determination that claimant could perform light work.

Finally, and not insignificantly, claimant's own function report supports the ALJ's conclusion that claimant is capable of performing light work, including his past relevant work.  Id. at 111-26.  As the ALJ noted, claimant stated that he had some physical limitations due to the blindness in his right eye and osteoarthritis of his knees, such as double vision, reduced depth perception, and headaches, he also reported that he cuts the grass and does "minor household repairs," drives a car, pays bills and uses a checkbook, watches television, and golfs,

13

although he uses a golf cart and is told where his ball is if he cannot find it.  Id. at 111-15.  Claimant also testified at his December 2012 hearing that the vision in his left eye is 20/20 and that he has been doing "a little bit of renovation . . . on the house for the past seven or eight years."  Id. at 30, 34.

This record evidence, combined with the fact that claimant did actually perform his previous employment for approximately six years after losing the vision in his right eye, supports the ALJ's RFC determination that claimant retains the capacity to perform light work, including his past relevant work.

## II.  Medical Opinion Evidence

In addition to challenging the ALJ's RFC determination, claimant also asserts the ALJ failed to weigh properly all relevant medical evidence.  Specifically, he challenges the ALJ's decision to give "great weight" to the opinions expressed by one of his treating physicians, Dr. Mehl, see Admin. Rec. at 247-56, 268-72, 282-87, and Dr. William Jamieson, Ph.D., a state agency consultant who examined the record but not claimant, id. at 39-43, 45-46, and too little weight to the opinions expressed by Dr. Cheryl Bildner, Ph.D., a state agency consultative psychologist

14

who examined claimant as part of his disability application, <u>id.</u> at 295-99.[4]

The ALJ was entitled to afford Dr. Mehl's opinion great, but not controlling, weight.  As claimant recognizes, the opinion of a treating physician will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." 20 C.F.R. § 404.1527(c)(2).  When the ALJ does not give controlling weight to a treating physician's opinion, she must determine what weight, if any, to give it in accordance with the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the opinion is supported by relevant medical evidence and explanations; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is expressing an opinion in her field of expertise; and (6) other factors claimant or others bring to the ALJ's attention, or of which the ALJ is aware, which tend to support or contradict the opinion.  <u>See id.</u> at § 404.1527(c)(2)-(6).

---

[4] Claimant's contention that the ALJ should have also relied on the vocational expert in his analysis of the medical evidence is rejected, as previously explained in this order.

The record shows that Dr. Mehl was claimant's primary care physician from at least February through August 2012.  See Admin. Rec. at 247-56, 268-72, 282-87.  She regularly signed off on examination and treatment notes during that time and completed claimant's Medical Source Statement as his "primary care" physician on September 11, 2012.  Id. at 287.  The ALJ did not give Dr. Mehl's opinion that claimant could perform work at all exertional levels controlling weight because the length of time claimant received treatment from Dr. Mehl was unclear from the record.  Id. at 20.  However, because her opinion was "largely consistent with and supported by the evidence of record," the ALJ gave it "great weight" as he was entitled to under the regulations.  Id.

While it is true that Dr. Mehl is not a specialist in psychological behavior, as claimant points out, she is a physician who had at least six month's experience treating claimant, and her opinions are generally consistent with those of Dr. Bildner, as set out above, and Dr. Jamieson, both psychologists, concerning at least claimant's ability to sit, stand, walk, follow instructions, and attend to his financial affairs.  To the extent that she drew conclusions from her observations of claimant that are inconsistent with other medical evidence in the record and claimant's function report — that

16

claimant could lift and carry up to one hundred pounds for example — the ALJ rejected those conclusions.

The ALJ also properly considered and evaluated the opinion of Dr. Jamieson. While noting that he did not examine claimant, the ALJ recognized that he did examine the record and the opinions of treating and examining doctors. See Admin. Rec. at 16, 20. "As a general matter, an ALJ may place '[g]reater reliance' on the assessment of a non-examining physician where the physician 'reviewed the reports of examining and treating doctors . . . and supported [[his] conclusions with reference to medical findings.'" Ferland v. Astrue, No. 11-123, 2011 U.S. Dist. LEXIS 126188, at *10-*11 (D.N.H. Oct. 31, 2011) (quoting Quintana v. Comm'r of Social Security, 110 Fed. Appx. 142, at *1 (1st Cir. 2004)); see also 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.").

The ALJ specifically stated that Dr. Jamieson "gave weight to the opinion of Dr. Bildner, but "noted that her opinion regarding the claimant's inability to sustain attention or consistent schedule were discounted, as they were unsupported by objective findings." Admin. Rec. at 16.

17

As the ALJ noted, the problem with Dr. Bildner's opinion that claimant "is unable to sustain attention and concentration for prolonged periods of time" and that his "[p]ace of task completion is likely to be delayed" is that it is inconsistent with the balance of claimant's medical records, including other portions of her own report, as set out above in this order. Id. at 16.

Thus, while there is certainly evidence in the record to support claimant's assertions of disabling impairments, there is also substantial countervailing evidence to support the ALJ's conclusion that claimant is not totally precluded from all gainful activity. Consequently, there is no basis for the court to vacate the ALJ's conclusion.

## Conclusion

This court's review of the ALJ's decision is both limited and deferential. The court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether he is disabled under the Act. Rather, the court's inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Provided the ALJ's findings are properly supported by substantial evidence - as they are in this case -

the court must sustain those findings <u>even when there may also be substantial evidence supporting the contrary position</u>.  Such is the nature of judicial review of disability benefit determinations.  <u>See, e.g.</u>, <u>Tsarelka v. Sec'y of Health & Human Servs.</u>, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); <u>Rodriguez v. Sec'y of Health & Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of his decision (December 28, 2012).  Both the ALJ's RFC determination and his conclusion that claimant is able to perform his past relevant work are well-reasoned and well-supported by substantial documentary evidence.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to

reverse the decision of the Commissioner (document no. 6) is denied, and the Acting Commissioner's motion to affirm her decision (document no. 8) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

    **SO ORDERED.**

                                                      Steven J. McAuliffe
                                                    United States District Judge

January 15, 2015

cc:  Brenda M. Golden Hallisey, Esq.
     T. David Plourde, Esq.